Case 16-3737, DHSC LLC v. California Nurses Association. Argument not to exceed 15 minutes per side. Michael Files, you may proceed for the appellant. Good morning, Your Honors, and may it please the Court. Michael Files, appearing on behalf of the Appellant Affinity Medical Center. I've reserved three minutes for rebuttal. Your Honors, we respectfully request that this Court reverse the judgment of the District Court, which erroneously held that it lacks subject matter jurisdiction over this Section 301 action. When Congress enacted Section 301, it had a dual purpose. One, it felt at the time, this was back in the 1940s, it felt that unions often escaped liability in a breach of contract setting because the NLRB was the only resource, and Congress didn't like that all other citizens could be sued for breaches of contract, but unions couldn't. The other purpose of Section 301 was the hope that by enforcing, by encouraging collective bargaining agreements and enforcing them when there is a breach, parties are more likely to act in good faith, and ideally, Congress thought, they would create harmony in the industry between employers and unions. Since that time, it's become clear, given the very nature of collective bargaining agreements, there are disputes which are inevitably both contractual and representational in nature. And when you have those that are contractual and representational, as you say this one is, and I understand that you want to shoehorn this under 301, but how can we decide this issue without deciding the issue that's already before the NLRB board? Aren't they really intertwined? They overlap, but they are not intertwined. And the overlap is actually something that the Supreme Court recognized 60 years ago in the Kerry v. Westinghouse case. In fact, the Supreme Court said something that I find really quite dispositive. They said, even if the contract dispute involves a representational issue, and even if you have a remedy before the board, federal courts are not stripped of their jurisdiction to enforce arbitration clauses. And I think that is very telling because panels of this court just in the last decade have said, in fact, it goes further. 301 does not just confer jurisdiction. It actually expresses a federal policy that federal courts should enforce collective bargaining agreements, and particularly arbitration clauses. Now, in terms of the overlap here, Your Honor, not in the operative complaint at issue, nothing in our briefing has requested relief consisting of, we would like an arbitrator or a court to say the union is not the bargaining representative. That is the NLRB's role, and that issue has been decided by the NLRB. The issue is different. We assert that the breach occurred well before the NLRB ever certified the union as the bargaining representative. Take, for example, highlighting that this truly is a breach of contract case. The contract states, and this is one of the alleged breaches, it's paragraph 20 of the election agreement, and it deals with what happens when disputes arise in the context of the election process. And it says, the parties acknowledge and submit to the arbitrator's exclusive authority to rule on such objection. Are you talking about your election procedure agreement? Correct, Your Honor. Which was never signed? It's an implied agreement because it is unsigned. Oh, what's your theory for that? Twofold, Your Honor. First, panels of this court have repeatedly upheld implied agreements where the course of conduct of the parties evinces an agreement to be bound by certain terms. But didn't that agreement say it's not binding unless signed? And that's why we don't assert an express contract, because it is unsigned. With the district court. Unsigned contracts become binding by implication. Well, binding, Your Honor, in the sense that during the bargaining proceeding leading up to the election, the parties invoked this unsigned agreement 30 times, 27 of those times, by the union itself asking affinity to do something or refrain from doing something and citing to actual provisions of this signed agreement. So through this agreement provided a framework of what was the implied agreement, which is implied through the conduct. What's your best case that backs you up on that theory? The best case for that, and I apologize that I didn't have that at the ready, but it is in our reply brief, and it is. We have the Sixth Circuit case of Hamilton v. Foundry. We have the number of cases cited on pages 52 and 53 of our reply brief. And, Your Honor, I would also ask that the court look at document number 22 from the record. It's the district court's decision denying the union's 12B6 motion, where the union raised this issue and said, well, it has to be signed. It's not signed, therefore there's no agreement. Yes, the district court said it is unsigned, but they're not trying to enforce the actual unsigned agreement. They're saying the framework for your agreement, the implied agreement, stems from what you had agreed to that's unsigned, but you operated under it for months. You invoke the various provisions of those agreements. In fact, Your Honor, one of the things attached to the complaint is a letter from the union saying, pursuant to section such and such of the agreement, we are asking that you begin the process for elections. And that is all laid out in the agreement. The other thing the parties did sign was the consent election agreement with the board, right? I believe that's correct. Was that signed before or after this implied agreement? I don't recall, Your Honor, in terms of timing. Well, it seems like it would make a difference if the consent election agreement with the board was after this agreement that you all never could agree on to sign. Wouldn't that take precedent? But it would cover different issues, Your Honor. The election procedures agreement and the LRA that are attached to the complaint deal with disputes that arise between the parties. It doesn't deal with the specificity of the board overseeing the election. These actually deal with the relationship of the parties at various times. I think, Your Honor, it's unsigned, but to say there was no contract at all when the parties operated under it and invoked these provisions repeatedly, both sides, it has said in the amended complaint 27 times the union itself invoked these unsigned agreements to require affinity to take certain actions. I mean, that's very tough. Well, I assume the basic dispute is affinity would just assume it's nurses not be unionized, right? Well, I think that's probably the scenario of most employers. But in this case, the actual affinity actually abided by the neutrality provisions in these unsigned agreements and did not take a position throughout the entire process. It did that on the basis of these implied agreements. I mean, the election was very close here. What was it, like 104 and 96 against and seven in dispute? It was very close, Your Honor. But I think taking it back to the issue of jurisdiction, we're not saying that an arbitrator can or should overrule the NLRB. That's not the request here. But if the breach occurred, if these parties had an agreement that these election procedures will take place in a certain way, one of the agreements was if there's a dispute over votes, they will submit the disputes to binding arbitration. And this was not some drawn-out process. They had agreed that it would take place within 24 hours over certain objections or 14 days. The agreement you signed, that you did sign, said the board would arbitrate all election-related disputes, doesn't it? Isn't that what it says? No, I don't believe so, Your Honor. It doesn't say that? I don't believe so. Well, we'll ask counsel from the NLRB about that. The board would oversee it, but the parties agreed that they would be bound by these election procedures. But, Your Honor, I would ask the court to consider the implication of this. Section 301 was intended to expand federal court jurisdiction, not restrict it. Here, the union felt, given the climate at the NLRB, that it might have a better shot in front of the board if it eschewed the contract and proceeded with the board, notwithstanding their agreement. But in a few months from now or a year from now, we can imagine a scenario where an employer will also feel emboldened to say, to heck with our contract, we think we could do better in front of the board. But that's antithetical to the purpose of Section 301. Section 301 meant to enforce these agreements and enforce arbitration clauses, not allow parties to pick and choose when they're going to abide by them. I still don't understand how we can decide that you've presented a contractual issue without conflicting with the board's decision, which has rejected Affinity's argument that an arbitrator was necessary to resolve the election. I'm not sure how we walk that line. Well, whether an arbitrator is permitted stems from the party's contracts. It doesn't stem from operation of federal law or the NLRB's authority. The parties agreed to arbitration of disputes. And so all we're asking— Any unsigned— The implied agreement, Your Honor. And given that that is what were the powers, and now the powers of the arbitrator here. The arbitrator, and this is consistent with Sixth Circuit precedent, U.S. Supreme Court precedent, an arbitrator has very broad powers to fashion a remedy. He or she can, and in this case the parties actually agreed that equitable relief, compensatory damages, attorney's fees, costs are all within the arbitrator's power. If he or she finds that there was a breach of the contract, he or she is the one to decide what the proper remedy that flows from that breach is, if a breach is found. And I think to say, again, I think it's important to note that case after case, looking at TRAFTAC, looking at Deponio, Deponio is actually an interesting one because it followed TRAFTAC. And the court noted just because the NLRB has initiated proceedings does not mean that it will always foreclose a district court having jurisdiction over all claims between the parties. And I think that's telling. We are not asking the court. We are not asking the arbitrator to make an initial decision of representation. That is what the board does. But if there were breaches independent of that for which a remedy could be fashioned by an arbitrator, that is certainly something within his powers. We've touched on the alternative argument raised by the union about the implied contract, Your Honor. It is an implied contract. And, again, I would turn the court to docket number 22. It's the last two pages of the district court's opinion. All of the case law is cited from the Sixth Circuit and others, highlighting why an agreement existed here or at least why Affinity has pled a claim, which is we are at the 12B6 stage after all. The other arguments raised by the union, Your Honor, I think we fully covered those in the reply brief, but really, judicial estoppel is just not applicable, either procedurally or substantively. It has never been raised before, and now it's being presented on appeal. Substantively, the union concedes that Affinity has never taken an inconsistent position upon which it succeeded. So those arguments really don't have any merit. And so given that, I would ask that the court, respectfully, I would ask that the court reverse the judgment of the district court because it does have subject matter jurisdiction under Section 301. Thank you. I look forward to your rebuttal comments. Counsel for the appellee. Good morning, Your Honors. Carol Igo on behalf of the Pelley California Nurses Association National Nurses Organizing Committee. May it please the court. Your Honors, despite Affinity's efforts to obfuscate, the facts and the law in this case are actually fairly simple, and I'd like to use my time to quickly clarify both. First and foremost, based on Affinity's amended complaint and the board's Affinity decision, the district court was correct in finding that the NLRB has already exercised its jurisdiction over all of the disputes that Affinity raises in its Section 301 complaint. Although Affinity makes several generic assertions of a failure to arbitrate undefined disputes, its amended complaint actually identifies only three specific disputes. First, in paragraphs 32 and 33, Affinity pleads that the union failed to arbitrate the election objections and challenges and actively participated in the board's resolution of the challenges. Second, in paragraph 34, Affinity pleads that the union failed to arbitrate an unresolved dispute about Affinity's duty to bargain. And third, in paragraph 36, Affinity pleads that the union failed to arbitrate an unresolved dispute about post-election access. Affinity then plainly asks the district court to find that the union breached an alleged implied agreement by failing to submit these disputes to arbitration and to compel the union to do so. But the NLRB has already exercised its jurisdiction over all three of these substantive disputes. It resolved the election objections and challenges and certified the union as a result. And it exercised its jurisdiction over the questions of Affinity's duty to bargain, as well as the retaliatory denial of post-election access, deciding them both as ULPs over which it ordered extensive relief. And the NLRB also already rejected expressly Affinity's argument that these disputes ought to have been decided by an arbitrator rather than the NLRB. Is all that what's on appeal to the D.C. Court of Appeals? That's right, Judge Gilman. Affinity has filed a petition for review with the D.C. Circuit and has asked the D.C. Circuit to reverse that NLRB order, in part on the basis that those disputes ought to have been decided in arbitration rather than before the board. Why are we here? Well, the union agrees with Your Honor's sentiment in that matter. Really, we're here to address their arguments and ensure that the court hasn't been misled by any efforts to obscure what's really at issue. And you say that there is no issue or no part of an issue in this dispute that's not covered by what's before the board. All of these issues are subsumed in the board's opinion and what's on appeal. That's right, Judge Donnell. In addition to that, the district court specifically gave Affinity the opportunity to clarify how the issues it raises in its Section 301 complaint are distinct from those issues already decided by the NLRB. And the court did so in the context of a subject matter jurisdiction challenged by the union on the basis of primarily representational preemption, which would, of course, require the plaintiff bearing the burden to show that the issues it raises in its Section 301 complaint are, in fact, distinct. But Affinity declined the court's offer and instead filed a supplemental response with Judge Pearson in which it declined, quote, the court's offer to provide any further factual allegation or discernment, end quote. And based on these facts, the district court did not err in finding that the issues Affinity raises in its Section 301 complaint were, in fact, already decided by the board. This is a conflict between the National Labor Relations Act concerning representation and the jurisdiction of the board and the Taft-Hartley Act. And what should the policy of the courts be when you have a conflict like this? Assuming that this contract is a contract, impliedly, what should the policy of the law be to resolve this kind of conflict between a contract, assuming there is a contract, under 301 and a representational proceeding before the board? Judge Mayer, I think that is the crux of this court's primarily representational preemption doctrine, which has been recognized and applied by most other circuits. And I think this court's decision in Traftec really teased out how this court ought to resolve the tensions between the Labor Management Relations Act and the NLRA when it comes to Section 301 complaints that allege breach, which appear to also impinge on the NLRB's primary, if not exclusive, jurisdiction over questions of representation. And the court does so by deferring to the NLRB where the NLRB has already issued a decision. First come, first serve doctrine to some extent? To some extent. And I think that makes sense because where the NLRB has already issued a decision, it's exercised its expertise, which it was vested in by Congress over matters of representation, to decide in the first instance that the issue was, in fact, an issue of representation. The NLRB, by its own policies set forth in its guidance manuals, which are all public record, doesn't exercise its jurisdiction where it finds the real matter in dispute is actually an issue that requires interpretation of the party's contract. It's a problem, isn't there, where you have this conflict. And what happens often in such a conflict is it just delays resolving any kind of question for some long period of time while the litigation goes forward, both before the NLRB and then whatever appeals there are from the board's action and the action of a district court in three or one. I mean, unless we have a pretty quick way of dealing with that kind of issue, it just goes on and on and on. You never get to collective bargaining that way, right? I think you're right, Judge Merritt. And, of course, that would thwart the purpose of the Act, which is to give workers the right to collective bargaining in this country. And also I think that's why Congress has carefully structured a process of administrative decision and judicial review, right? This matter is before the D.C. Circuit. It's in abeyance, but the D.C. Circuit will ultimately exercise its jurisdiction. And why primarily representational preemption forecloses either party from creating parallel litigation in district court by questioning matters through an alleged 301 complaint over which the board has already exercised its jurisdiction. Affinity can and will have its opportunity to argue to the D.C. Circuit that the board got it wrong and these disputes should have been decided in arbitration. What primarily representational preemption forecloses is creating a second parallel track of litigation which could create conflicting decisions resulting in even further delay of the effect of the board's order. Affinity says that this is not just a representational issue, it's representational plus, which is why they have been able to carve out an argument that doesn't bring this squarely within the matters that are before the board and on appeal. Your response to that? Well, Judge Donnell, I agree. Affinity has taken great pains to characterize its Section 301 claims as merely breaches of contract by the union in failing to arbitrate these disputes. And, of course, it argues that the fact that it seeks to compel these underlying disputes to arbitration should play no role in this court's analysis regardless of whether the NLRB has already exercised its jurisdiction over those underlying matters. But, as this circuit has repeatedly explained, courts apply this doctrine, this preemption doctrine, even where a party characterizes the dispute as a breach of contract, in order to prevent an end run around the NLRA under the guise of contract interpretation. And when you look at this circuit's case law, it's clear that because the court must actually determine whether there is a conflict, the court does not look merely at the party's asserted breach claim but instead looks behind it to the underlying dispute. And this court's decision in DiPoneo Construction Company provides one great example. In that case, the union filed the ULP with the NLRB, asserting that the employer had violated its duty to bargain with the union under the NLRA. And the employer, in response, filed a Section 301 complaint, alleging that the union had breached the contract between the parties by failing to recognize that the employer had complied with the contract's termination clause and therefore no longer had a duty to recognize the union. What would be your response if the court itself had gone ahead and resolved the problem before the NLRB, and the same problem was pending before the NLRB on a representational claim, but the court had gone ahead and resolved the question and held that, well, there is a contract here  Would you still say first come, first serve is a major factor, or what? It could go either way. Whoever is first, you don't know for sure how that might go. What would be your thought if it had been the opposite as to who went first? Judge Merritt, my position before this court would be the same in that circumstance, and that's because primarily representational preemption is not purely a race to the courthouse doctrine. Instead, there is a two-part test that determines whether the district court properly has jurisdiction or whether the district court's jurisdiction is displaced because the matter is primarily representational. And that two-part test is whether the board has already exercised its jurisdiction over the underlying dispute, even if those proceedings are not yet complete, as recognized by this court in Traftec. And how exactly, then, if it's our duty to decide what is primary, what is the standard for deciding what is primary? There's a two-part standard, Your Honor. The first part is looking at the underlying dispute, as this court did in DiPadeno Construction or in Traftec or in Olympic Plating, asking whether the NLRB has already exercised its jurisdiction, regardless of conclusion, over the major issues in dispute, such that the same questions of law or fact are implicated. The second independent test that this court applies is whether the underlying dispute is an initial decision of representation. And what that means and how courts have applied that second prong of the test is even if the NLRB had not exercised its jurisdiction in any way and neither party had yet asked the NLRB to do so, if the underlying dispute were, in fact, an initial decision of representation. Basically, your argument is that determining representational disputes is one of the primary responsibilities of the NLRB and its decision on that kind of issue should take precedent over any court decision about that. Over any district court decision, Your Honor. If you've got an appeal. Exactly. And that's the deliberate structure and balance of those varied grants of jurisdiction, and that's what this court recognizes in decision after decision. Well, what's your response to opposing counsel's point that as far as the informal or ad hoc adoption of the unsigned agreement, that it had been invoked 30-something times by affinity? Well, Judge Gilman, the union disagrees with affinity's position factually, but I don't think this court needs to get into the weeds on those facts to resolve that issue. And I'd actually like to address Your Honor's question to affinity, which was, was the consent election agreement signed before or after the formation of the alleged implied agreement? And it was signed after. It's in the record below, which was cited in the briefs before this court. It is document 45-2. It was signed by both parties. It's the board's standard form agreement. And as Your Honor was supposing, it does, in fact, vest final resolution of the election objections and challenges with the NLRB. Note that they say in their reply brief they cited cases that support their implied ad hoc agreement. Do those cases, in your opinion, do that? I don't think they do, Your Honor. Those cases stand for general propositions like there may be an implied agreement based on conduct or that the parties may ratify an agreement that's unsigned by conduct. But none of those cases get into the specificity, which Your Honor noted here, which is you have an unsigned agreement that specifies that it will not be binding unless executed. And the parties did not execute it because, and this fact is in the record as an omission by affinity, because their relationship soured, as is evidenced by the stream of litigation that has followed. Your Honors, I see that I am out of time. If I may briefly conclude. You may, very briefly. The bottom line is that despite having entered the consent election agreement, excuse me, the bottom line is that despite having entered the consent election agreement, affinity is now asking this court to give the district court jurisdiction to compel representational issues that have already been decided by the NLRB to arbitration. And the only purpose of this litigation can be to create continued delay of the effect of the board's order. And the union, therefore, based on all the reasons before this court, respectfully requests the court to affirm the district court's finding that affinity, the district court's finding that it lacked jurisdiction over these disputes. Thank you. Mr. Follis? Thank you, Your Honor. Your Honor, looking at the party's conduct, we are at least as to the breach of contract issue, I'm sorry, as to whether there was a contract. It's at the 12B6 stage. It was a thoroughly pled complaint, and opposing counsel can disclaim whether the complaint is factually accurate, but it was presented and signed under Rule 11, and we fully stand behind it. That the parties, and it was the union, I think it was 25 times, they cited to specifically to these unsigned agreements and demanded that affinity take certain conduct or refrain from taking certain conduct. That creates an implied agreement, and at least on a 12B6 motion, anything beyond the pleading is improper. And the district court correctly found that an implied and fact contract has been pled. Could the district court later change its mind on whether a contract form, once discovery gets going? That's possible. But as mentioned, the complaint actually attaches letters from counsel for the union, invoking the election procedure agreement, Your Honor, the unsigned agreement, asking that affinity, the parties jointly submitted press releases also attached to the amended complaint, invoking the election procedure agreement, which followed the, I'm sorry, so they had the consent agreement with the board, but these agreements clearly intended something else. And as counsel mentioned, that is a standard form with the board. These were negotiated terms that the parties relied upon. The other issues I want to touch upon was a mention that it could create a conflict if this action goes forward. Well, one of the cases we cited, it's out of the Fourth Circuit, not binding on this court, was the Shopper's World case where the court said, could conflicts arise when there is some overlap between contractual and representational issues? Absolutely. But given the purpose of Section 301, as interpreted by the Supreme Court in the Kerry decision, that potential for conflict can't have a court sidestep its responsibilities and give up its jurisdiction. And the third point I want to make on the jurisdiction. The problem there is simply that it invites delay, so that it just takes a lot longer to resolve the issues because you've got a case pending before the NLRB under the National Labor Relations Act on representation, which under the National Labor Relations Act, Congress thought the NLRB ought to gain expertise in deciding those kinds of issues. A conflict between that and the expertise, if any, however much that is, of an arbitrator, and it just invites conflict between two judicial systems. And what that invites is great delay. And we ought not to go along with that if we can avoid it. My time is up. May I respond? You may respond. Thank you. Your Honor, delay is certainly possible. Delay is always possible. I mean, we've got it in this particular case. I don't know how long the delay has been, but what the D.C. Circuit is deferring to find out what we're going to do in this case? No, they are not. They have a different case going before them, so they held one case in advance while they decide another issue in a different case. It is not related to this case. But to address that issue, Your Honor, this is not a representational question because we are not asking the court and we are not asking an arbitrator to overrule the decision of the NLRB. In fact, as Judge Gilman noted, that's what's happening in the D.C. Circuit. That is a substantive challenge to the board's actions, et cetera. That is a substantive dispute over representational issues. This is contractual. The court can look at the election procedure agreement, paragraph 20, at the amended complaint, and we allege a breach of that. They should have submitted the disputes when they arose to an arbitrator. And an arbitrator could still to this day decide everything that flowed from that breach is compensable in some way, and he or she could fashion a remedy that would never touch upon the board's conclusion regarding representation. Thank you, Your Honors. I appreciate it. Thank you, sir. I thank the parties for your arguments. The matter is submitted and the court will issue its decision in due course. Thank you. Thank you.